UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA  :

          v.  :  Criminal No. 06-21-02 (RBW)

RALPH INGRAM  :\

MOTION TO SUPPRESS EVIDENCE
( Wire Intercept & Search)

    Defendant, Ralph Ingram, by and through his attorney, moves the Court for an Order suppressing as evidence against him in any criminal proceeding all evidence, tangible and intangible, including any and all statements, seized, derived and obtained as the result of wire interceptions and the issuance and execution of a search warrant, all more fully described and detailed below.

Background

    1. Defendant, Ralph Ingram, is named in a Superseding Indictment, filed August 23, 2006, in this Court which charges him and seven other named Defendants with Conspiracy To Distribute and Possess With intent to Distribute Heroin, Cocaine, Cocaine Base, Phencyclidine and Marijuana from the period alleged at least 2002 up to and including January of 2006, in the District of Columbia, Maryland, Virginia, California and elsewhere.

There are a total of 115 Counts charging various Defendants with various offenses related to the Conspiracy Count, including firearms and telephone. Defendant, Ralph Ingram is charged in Count One – Conspiracy and in other Counts charging Firearms and Controlled Substance Act offenses, and Use of a Communications Facility.

    2. Defendant was arrested on January 26, 2006 during the execution of a Search Warrant for premises 2101 Ridgecrest Court, Apt. 204, S.E.Washington, D.C. (No. 06-032M-01) Preceding the issuance of the search warrant, electronic surveillance was conducted pursuant to various Court Orders – discussed below. The government contends that Defendant was overheard during the course of electronic surveillance on telephones subscribed to by Walter Staples and Michelle Sams referred to in paragraph 4, below.

.    3. On September 21, 2005, a Judge of this Court Ordered the interception of cellular telephone number 202-277-8374 – subscriber, Kevin Morris. ( Misc 05-362) This interception was extended by Order of this Court on October 21, 2005.  (Misc 05-362 (EGS)

    4. On November 22, 2005, this Court Ordered the interception of telephone numbers 202-270-1772 and 202 889-6557 – the target being Cinquan Blakney. (Misc 05-467 (EGS).  This interception was extended on

December 29, 2005. (Misc No. 05-467 (EGS). The government alleges that Defendant, Ralph Ingram, was intercepted during the course of these two interception periods. Counts 44, 45, 46, 47, 49, and 62, charge Defendant with use of a communication facility during the period of the two intercepts

    5. The Affidavit in support of the Search Warrant for 2101 Ridgecrest Court, Apartment #204, (No. 06-032M-01) devotes pages 16 through 22, to allegations concerning the fruits of the wire interceptions.

    6. During the course of the execution of the search warrant for Ridgecrest Court on September 26, 2006, the government contends that certain controlled substances and firearms were recovered as well as other physical evidence. Defendants, Cinquan Blakney, India Graves, Tristan Sellers and Ralph Ingram were arrested.

    7. Further factual details will be discussed in conjunction with legal arguments below.

Points and Authorities

    8. The statutory authority for the issuance of an order for the interception of wire, electronic and oral communications is set forth in 18 U.S. Code 2510-2519.

    9. The United Sates Court of Appeals for the District of Columbia Circuit has recently reviewed the essential requirements for the issuance of

3

an order for the interception of wire, oral, or electronic communications.

*United States v. Carter* 449 F.3d 1287, 1292-93 (D.C. Cir. 2006).

> " . . .The wiretap statute requires that an application for a wiretap shall be in writing, under oath, and shall contain certain information including ' a full and complete statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued.' . . .On the basis of the facts submitted by the applicant, the district court may authorize a wiretap upon finding that (1) probable cause exists to believe that an individual has committed or is about to commit one of certain enumerate offenses; (2) probable cause exists to believe that 'particular communications concerning that offense will be obtained' through an interception; (3) 'normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried'; and (4) probable cause exists to believe that the communication facility sought to be wiretapped '(is) being used, or (is) about to be used, in connection with the commission of (the) offense.' Id. &2518(3)(a-d); *see United States v. Donovan,* 429 U.S. 413, 435 (1977). The determination that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous.' 18 U.S.C. & 25l8(3)©, is referred to as the 'necessity requirement,' and it is the keystone of congressional regulation of electronics esavesdropping.' *United States v.Williams*, 580 F.2d 578, 587-588 (D.C. Cir. 1978).
>
>    *    *    *    *
>
>  Congress created the necessity requirement to ensure that 'wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'*United States v. Kahn,* 415 U.S. 143, 153 n. 12 (1974). To adhere to Congress's purpose, a court will 'give close scrutiny' to a contested wiretap application and will 'reject generalized and conclusory statements that other investigative procedures will prove unsuccessful.' *Williams,* 580 F.2d at 588.

 10. The above summarizes the principle statutory admonitions which govern all wire intercept orders.

11.  Title 18 U.S.C. &2518(10)(a) permits any "aggrieved person" to move to suppress the contents of any wire or oral communication or evidence derived from unlawfully obtained electronic surveillance, See *Alderman v. United States*, 394 U.S. 165, 171-174 (1969); *United States v. Williams*, supra.  An "aggrieved person" is defined under title 18 U.S.C. 25l0(11) as "a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed." *Unite States v. Bellosi*, 501 F.2d 833, 842 (D.C. Cir. 1974).  As the government contends that Ralph Ingram was intercepted in both wire intercepts of November 22, 2005 and December 29, 2005, he has standing to challenge the validity of the interceptions.

12.  In all applications for interception, "Congress legislated in considerable detail in providing for applications and orders. . .and evinced a clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.  These procedures are not to be routinely employed as the initial step in criminal investigation. . .  the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . ." *United States v. Giordano*, 416

U.S. 505, 515 (1974).  The significance of the provision is to ensure that the drastic and invasive measure of wiretapping is "not resorted to in situation where traditional investigative techniques would suffice to expose the crime." *United States v. Oriakhi*, 57 F.3d 1290, 1298 (4th Cir. 1995).  The provisions are intended to "make doubly sure that the statutory authority. . .be used with restraint and only when the circumstances warrant the surreptitious interception of wire and oral communications." (citing *Giordano*). . . .To obtain a wiretap, the government must overcome the statutory presumption against the intrusive investigative method by proving necessity. . ." *United States v. Gonzales, Inc.*, 412 F.3d 1102, 1110 1112 (9th Cir. 2005), amended 437 F.3d 854 (9th Cir. 2006).

  13  A Court reviewing an affidavit must not accept general allegations by law enforcement officers about a case and whether or not it is difficult to investigate.  In *United States v. Robinson,* 698 F.2d 448, 453 (D. C. Cir. 1983) , the Court stated: ". . .we must be careful not to permit the government to characterize a case as a 'drug conspiracy' . . .that is therefore inherently difficult to investigate.  The affidavit must show with specificity why in this particular investigation ordinary means of investigation will fail."

14. In this case, there are two wiretap interception applications wherein two telephone numbers (202) 270-1772 and (202) 889-6557 were identified as targeted phones for which interception was sought and Orders were issued. (Misc No. 05-467 (EGS). The first Order authorizing interception was issued November 22, 2005. The second Order was issued December 29, 2005. Both were for thirty days. Cinquan Louis Blakney was listed as a target interceptee in both Applications and Orders, as well Kevin Morris , who was the target interceptee in two prior wiretap interception orders ( Misc No. 05-362 (EGS), issued September 21, 2005 and the second on October 21, 2005). Cinquan Louis Blakney was also listed as a target interceptee in both Applications and Orders involving Morris.

15. However, the situation does not commence with the aforementioned wire interception orders, wherein Cinquan Louis Blakney was listed was listed as a target interceptee. On February 13, 2004, an Order authorizing the interception of wire communications was issued for Cellular Telephone (202) 498-1071, subscribed in the name of Alvin Gasgen. (Misc No. 04-64). Cinquan Blakney was listed as a target interceptee. This authorization was extended by Order of March 17, 2004 with Cinquan Louis Blakney listed as a target interceptee.. On April 15, 2004, a second extention was ordered with Cinquan Louis Blakney listed as

7

a target interceptee. On April 27, 2004, an Order authorizing the interception of wire communications on telephone numbers (240) 398-6470, (202) 352-7898 and (202) 746-4132 was issued (Misc No. 04-201) listing Gerald Eiland as a subscriber- a Larry Love and a prepaid cellular phone with no subscriber. Cinquan Louis Blakney was listed as a target interceptee. On May 28, 2004, an Order extending the interception of telephone number (240) 398-6470) was issued – (Misc No. 04-201) Cinquan Louis Blakney was listed as a target interceptee.

    16. In addition to the wire interception orders referred to above, it appears that on May 19, 2004, an Order was issued by a District Judge in the United States District Court for the Eastern District of Virginia for the Interception of Visual, Non Verbal Conduct and Activities By Means of Closed Circuit Television Occurring Within Room 628 of the Hampton Inn, 5821 Richmond Highway, Alexandria, Virginia. The Order authorized the FBI to intercept and record the visual and non verbal conduct, and to permit the FBI to surreptitiously enter the premises for purposes of installing, maintaining and removing any electronic monitoring devices. The Order was for 30 days duration. There was also an Order To Intercept Oral Communications for the same period. (Misc 1:04mg176). An Affidavit

was submitted in support of these applications. The papers listed Cinquan Louis Blakney as a target interceptee.

    17.  The Affidavit in Support of the Application for the wire intercepts subscribed November 22, 2005, discusses prior applications. It notes wire interceptions in 1998 and 1999 involving Kevin Gray, but does not mention any individuals charged in this case. (Aff pg. 55). The Affidavit discusses the facts of the wire interceptions in connection with the Gerald Eiland and Frederick Miller case and that Cinquan Blakney was a targeted interceptee, but alleges that it was not <u>believed that</u> he was intercepted. (Aff. Pg. 56). A reference to a wire intercept order of September 2, 2005 of a number subscribed to by a Denise Jones an used by Antoine Jones list Kevin Morris as a targeted interceptee. (Aff. Pg. 57).

    18.  The portion of the Affidavit dealing with prior applications references electronic interceptions in 1998 and 1999 but shows no relation to persons indicted in the instant case. (Aff pg. 55). The Affidavit on page 56, paragraph 81 refers to wire interceptions in connection the Gerald Eiland and Frederick Miller case. The Antoine Jones wire interception of September 2, 2005, and extended listed Morris as a targeted interceptee. (Id para 82). The Kevin Morris wire interceptions begun on September 21,

9

2005and extended October 21, 2005, states a belief that each of the targeted interceptees were intercepted. (Para 83).

19. It appears that beginning in February of 2004 through October 2005, there were seven wire interceptions authorized in which Cinquan Blakney was listed as a targeted interceptee. In addition, there was a Virginia Order for the interception of visual and non verbal conduct. Issued in May of 2004. in which Blakney was listed as a target interceptee.

20. Additionally, pen register and toll records acquisition were done pursuant to Court Order. (Aff. Pg. 35, para 39). In the section of the affidavit entitled "Need For The Interception," the affidavit references the Kevin Morris wire intercept. which began on September 22, 2004 and extended for thirty days. Inspite of this interception, the affidavit states "that agents have been unable to determine definitively where the narcotics are coming from and how Morris receives the narcotics." The Affidavit goes on to state in this section that "Your affiant <u>believes</u> that Cinquan Blakney is a <u>possible</u> supplier of heroin to Morris, but agents have not acquired any physical evidence to confirm this at this time. " (underlying added). The Affidavit goes on to state that several locations have been identified as possible storage locations, but that the agents have no physical or cooperator information to "confirm this speculation." (Aff. Pg. 42).

21. After seven prior wire intercepts, pen register and toll record information, the Affidavit in Support of the Wire Intercept for the telephones at issue herein, boils down to what Defendant would characterize as speculation that further electronic surveillance was necessary. For example in the case of the two wire interception Orders for the telephones subscribed to by Kevin Morris (202) 277-8374), a review of the CD's containing the intercepted calls reveals some l9,319 activations.

22. Section 2518(3)(c) providing for a full and complete statement as to the necessity for a wire intercept is to insure that the government "provide(s) the court with sufficient detail to allow the court to determine the necessity of the wiretap. The mere 'boilerplate recitation' (that the wiretaps are necessary) cannot suffice. *United States v. Leavis,* 853 F.2d 215, 221 (4th Cir. 1988).

23. The Affidavit submitted on December 29, 2005 for an extension of the wire interception on the two telephone numbers listed in the caption summarizes some of the calls intercepted. (Aff. Pg. 17-42) during the first wire intercept order. The Affidavit then states that there is a continued need for interception to satisfy the goals. Some eleven categories are listed. ( a-k, page 43, 44). In the Affidavit for the intercept of November 22, 2005 on the need for interception the same paragraphs (a – k ) are listed. The

generalized paragraph ( para 52, page 42- 43) is identical to the generalized paragraph in the December 29, 2005 Affidavit (page 43, 44). Defendant contends that a fair reading of the Affidavit does not establish how additional electronic surveillance could succeed and admits to nothing more than a generalized request for further electronic surveillance.

    24. If the Affidavit in support of the Wire Intercept Orders at issue in this case. (Misc No. 05-467 (EGS)) are invalid for the reasons argued above, then Defendant would argue that the "Good Faith Exception" created by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, would not apply, because the exclusionary rule is a judicial remedy, whereas "the law governing electronic surveillance is codified in a comprehensive statutory scheme providing explicit requirements, procedures and protections l8 U.S.C.& 2510, et seq.. . .*United States v. Rice,* 478 F.3d 704, 712(6th Cir. 2007). The Court in *Rice,* noted that 18 U.S.C. &2515 provides that no part of the contents of any wire communication and no evidence derived therefrom may be received in evidence in any trial. 478 F.3d at 712. The Court in *Rice,* noted a division in the Circuits on the issue, with the 8th, 4th and 11th Cicuits taking a different view. (Id pgs. 713, 714). Defendant would argue that the reasoning of the 6th Circuit is sound and that any direct

or derivative use of wire interceptions in violation of Title III are prohibited. and "Good Faith" does no apply.

      25.  Following the electronic surveillance in this case, a Search Warrant for premises 2101 Ridgecrest Court, Apartment #204, Washington, D.C. Southeast was issued by a Magistrate Judge of this Court on January 26, 2006  (06-032M-01). The Application for the Search Warrant was supported by a Affidavit subscribed and sworn to by a Detective of the Metropolitan Police Department..  The Affidavit included premises 811 Barnaby Street, Apartment #103, Southeast, Washington, D.C.  The first five pages of the Affidavit identifies seven generalized areas which do not identify which areas are pertinent to the target premises involved.  Page 6, gives a physical description of the target premises.  On page 7, the affiant alleges that "It is believed that 2101 Ridgecrest Court, Apartment #204, Southeast, Washington, D.C. is a 'stash' house for BLAKNEY."  The address is not mentioned again in the Affidavit until paragraph 31 on page 16. with the assertion that a Confidential Witness (CW 2) in early November 2005 was inside Ridgecrest Court Apt, 204, when Blakney supplied a co-conspirator, Anthony Moody with four ounces of PCP. (It should be noted that the copy of the Search Warrant Affidavit given to Counsel in discovery has a redaction of one and a half lines in paragraph 9  and almost five lines

redacted on page 10.  However, it appears from the context that the redactions related to a September 13, 2003 execution of a search warrant for 725 Yuma St. S.E.).  The balance of the Affidavit relates to the Title III Wire Intercept Orders referred to above. (Aff. Pg 16-22, para 32-=42).

26.  It should be noted that the Affidavit does not definitively allege that Ridgecrest Court is actually the residence of Blakney.  Reference to residence of the apartment appears on page 17 of the Affidavit wherein it states that the landlord confirms that India Graves resides in the apartment but references no other tenant.   On page 17, paragraph 33, references 811 Barnaby St. S.E.  Paragraphs 34, 35, 36, 37,  (Pgs 17, 18, 19, 20)  all reference the date of December 31, 2005.  These calls, made over 3 weeks prior to the issuance and execution of the search warrant , would not admit to  a reasonable belief that evidence would be found on the Ridgecrest Court premises on January 26, 2006.  The inference to be drawn would be that if there were contraband in the apartment, it was removed over 3 weeks prior to the issuance and execution of the search warrant.

27.  A determination of 'probable cause' involves  "whether, given all the circumstances set forth in the affidavit. . .,including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed. 2d 527 (1983).  There must be 'a nexus between the place to be searched and the evidence to be sought.' *United States v. Carpenter,* 360 F.3d 59l, 594 (6th Cir. 2004 (en banc). Further,' in determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items seized will be found in the place to be searched. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556&n.6,98 S.Ct. 1970, 1976-77 & n. 6, 56 L.Ed.2d 525 (1978). " *United States v. Lalor,* 996 F.2d 1578, 1582 (4th Cir. 1993).

    28.  A review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *Whiteley v. Warden*, 401 U.S. 560, 565, n. 8, 91 S. Ct. 1031, 28 L.Ed 2d 306 (1971).  Defendant contends that taking the Affidavit as a whole, probable cause to believe that evidence of crime would be found in the Ridgecrest Court premises at the time of the issuance and execution of the warrant  was so lacking as to render official believe in its existence entirely unreasonable. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984).

29. If the Wire Interception Orders issued in Misc No. 05-467 (EGS) are invalid for the reasons stated above, then Defendant argues that the Affidavit in support of the Search Warrant for Ridgecrest Court (No. 06-032M-01) is invalid as the portions of the Affidavit referring to the wire Intercepts are the "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471 (1963). Excising the fruits of the wire intercepts from the remaining parts of the Affidavit, Defendant contends probable cause for Ridgecrest Court is totally lacking.

30.. Defendant contends that any statements obtained from him, even if preceded by *Miranda* warnings. are tainted by his arrest during the execution of what Defendant contends is an unlawful search warrant. See *Brown v. Illinois,* 422 U.S. 590, 603-04 (1975);

## Conclusion

31. Defendant contends that a reading of the two Affidavits in support of the Applications for the wire interception Orders of November 22, 2005 and December 29, 2005 did not satisfy the necessity requirement of l8 U.S.C. 2518(1)(c ). It appears from a reading of the two Affidavits and a recitation of the results of prior wire interceptions as well as information obtained from observation and information received from other sources that the agents viewed the investigation as difficult and that a wire intercept is

necessary. Such is not what the statute requires. Considering all of the previous wire interceptions outlined above and the results of the observations and information obtained, Defendant contends that the necessity requirement was not met in this case, justifying the wire intercept Orders of November 22, 2005 and December 29, 2005.

WHEREFORE: Defendant prays that this motion be granted in all of its particulars and that all evidence seized, obtained and derived, be suppressed as evidence against him in any criminal proceeding.

_____
WILLIAM J. GARBER #42887
717 D Street, N.W. Suite 400
Washington, D.C. 2004-2817
(202) 638-4667
Attorney for Defendant

Certificate of Service

This is to certify that a copy of the foregoing Motion To Suppress Evidence was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification to counsel of record. This 19th day of October, 2007.

_____
William J. Garber