UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 06-21 (RBW) |
| v. : | Judge Reggie B. Walton |
| : | |
| RALPH INGRAM, et al., : | |
|     Defendants. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Ralph Ingram's supplemental motion to suppress evidence (Document 115). As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing.

### Facts

On January 26, 2006, the FBI arrived at 2101 Ridgecrest Court, Apartment 204, S.E., Washington D.C., to execute a search warrant issued by Magistrate Judge Deborah A. Robinson of the United States District Court for the District of Columbia. When the FBI arrived at this location, defendant Ingram was standing in the outside entranceway to apartment 204. Upon seeing the FBI, defendant ran back into apartment 204. Defendant was found by the FBI inside the a second floor bedroom of the apartment, during the execution of the search warrant. In the apartment, agents found weapons, drugs, drug trafficking paraphernalia and other evidence. An Uzi type firearm and large quantities of illegal narcotics were found in the bathroom on the

floor and in the bathtub, all in plain view. During the search, Ingram himself was found in possession of illegal narcotics. Ingram was arrested and, after waiving his <u>Miranda</u> rights, provided a statement to law enforcement, including admitting his possession of the narcotics found on his person.

<u>Argument</u>

1. <u>Defendant's Detention was in Accordance with the Principles Set Forth by The United States Supreme Court</u>.

Defendant Ingram contends that his arrest and search inside the Ridgecrest Court apartment was in violation of his Fourth Amendment rights because the search warrant concerned the search of 2101 Ridgecrest Court, Apartment 204, S.E., Washington, D.C. and did not specifically state that law enforcement officers could search him, even though he voluntarily entered those premises. However, as defendant correctly notes, the United States Supreme Court has expressly held that police are permitted to detain any individuals present inside the residence at the time a search warrant for that premises is executed. <u>Michigan v. Summers</u>, 452 U.S. 692 (1982). In <u>Summers</u>, the Supreme Court justified this type of detention due to the "legitimate law enforcement interest in preventing flight in the event incriminating evidence is found." <u>Id.</u> at 702. More importantly, the Supreme Court recognized that, "[a]lthough no special danger to police is suggested" in the record, detention of the occupants of the premises is warranted since "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or

2

destroy evidence." Id. at 702-703. Finally, the Supreme Court recognized the interest in detaining the occupants of the premises in order to facilitate the search itself by unlocking containers and the like. Id. at 703. Defendant also attempts to rely on Ybarra v. Illinois, 444 U.S. 85, 91-92 (1979). However, Ybarra is inapposite. In Ybarra, the Supreme Court held that the police did not have the authority to detain and search a patron of a public bar when executing a search warrant without some reason to believe that the patron was involved in illegal activity. Id. The circumstances in Ybarra are vastly different from a case in which a search warrant is executed in a private residence. The United States Court of Appeals for the D.C. Circuit, in affirming the legality of a search of individual in a residence during the execution of a search warrant on the residence, distinguishing Ybarra because "common sense suggests that there is a much greater likelihood that a person found in a small private residence containing drugs and with a history of being involved with drug trafficking will be involved in drug activity occurring there than an individual who happens to be in a public tavern where the bartender is suspected of possessing drugs." United States v. Reid, 997 F.2d 1576, 1578 (D.C. Cir. 1993), cert. denied, 510 U.S. 1132 (1994). Affidavit at para. 33. Similarly, the D. C. held in United States v. Holder, 990 F.2d 1327, 1329 (1993), that persons in private residences can be lawfully searched in the course of executing a search warrant for the residence and distinguished it from the search in Ybarra because (1) the search warrant was for a private apartment, to which access was presumably limited, raising a stronger inference of defendant's connection to the activities within it, and (2)

3

drugs were in plain view, so it was more likely than not that defendant was involved in the criminal activity.

In this case, Ingram ran into the Ridgcrest residence when he saw the police and was found in the apartment where illegal contraband, like weapons and narcotics, was in plain view, clearly indicating his involvement in the illegal activity in the house. Moreover, the affidavit in support of the search warrant provides evidence that Ingram was a participant in Cinquan Blakney's drug enterprise which used the Ridgecrest apartment as a drug stash location. Affidavit at para. 4, 31, 33-37.

Thus, defendant's detention and search were proper.

2. **Defendant Voluntarily Waived his Fifth Amendment Rights**

4

After his arrest on January 26, 2006, defendant Ingram was interviewed by the FBI. Defendant was advised of the identities of the FBI Agents interviewing him and at 11:11pm was given an Advice of Rights form. Defendant read the Advice of Rights Advice and subsequently waived his rights by signing the Advice of Rights Form at approximately 11:16 pm. Directly above defendant's signature, the Advice of Rights form states, "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."     In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court established a procedural mechanism to safeguard the exercise of the Fifth Amendment by persons confronted with custodial interrogation.  A defendant's waiver of the Miranda rights involves two separate questions. The first is whether the defendant "voluntarily" waived his rights in the sense that his decision was "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" Colorado v. Spring, 479 U.S. 564, 573 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The test used to determine if the statements made were voluntary is whether the statements were the product of an essentially free and uncoerced choice made by the defendant. See Schneckloth v. Bustmonte, 413 U.S. 218, 225 (1973).  The second question is whether the defendant "knowingly and intelligently" waived his Miranda rights. Id. In determining whether a defendant's waiver of his rights was knowing, intelligent, and voluntary, the Court must look to the totality of the circumstances, while the validity of a waiver must be determined by the particular facts,

5

background, experience and conduct of the accused. See North Carolina v. Butler, 441 U.S. 369, 374 (1979).

The government need only show by a preponderance of the evidence that a defendant knowingly, intelligently and voluntarily waived his rights. Here, defendant was advised of the identity of the interviewing agents, read his rights and voluntarily waived his rights before being questioned by the FBI by signing the Advice of Rights form. Accordingly, defendant's motion to suppress statements given to the police after he made a knowing, voluntary and intelligent waiver of his rights should be denied. See Colorado v. Connelly, 479 U.S. 157, 168 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972); United States v. Yunis, 859 F.2d 953, 962 (D.C. Cir. 1988).

WHEREFORE, the United States respectfully requests that the defendant's motion be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


GEORGE ELIOPOULOS

ANTHONY SCARPELLI
Assistant United States Attorneys

6