**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC - 4 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal Action No. 06-21-02 (RBW) |
| ) | Civil Action No. 11-2161 (RBW) |
| RALPH BERNARD INGRAM, ) | |
| ) | |
| Defendant.   ) | |

## MEMORANDUM OPINION

Ralph Bernard Ingram, the defendant in this criminal case, pleaded guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, Cocaine Base, Phencyclidine ("PCP"), and Marijuana, in violation of 21 U.S.C. § 846 (2006). ECF No. 182 at 1. The Court then sentenced him to thirteen years' imprisonment and five years' supervised release. ECF No. 210 at 2-3. Currently before the Court is Ingram's Motion under 28 U.S.C. § 2255(f)(3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s Mot."), which the government opposes, see United States' Opposition to Defendant's Motion under 28 U.S.C. § 2255(f)(3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Gov't's Opp'n"). Upon careful consideration of the parties' submissions and the entire record in this case, the Court concludes for the following reasons that Ingram's motion must be denied.

### I. BACKGROUND

Ingram was arrested on January 26, 2006, during the execution of a search warrant at an apartment located in Washington, D.C. Gov't's Opp'n at 4. As a result of this search, agents with the Federal Bureau of Investigation ("FBI") recovered "over 50 grams of cocaine base

1

(crack), cocaine, heroin, scales, crack cocaine residue, and firearms." Id. The FBI agents found over 80 bags of crack on Ingram's person. Id. Ingram also had in his possession a key to a minivan that the FBI later discovered contained "illegal contraband and narcotics trafficking paraphernalia." Id.

On August 23, 2006, Ingram was charged in a Superseding Indictment, along with seven other named defendants, with one count of Conspiracy to Distribute and Possess With Intent to Distribute Heroin, Cocaine, Cocaine Base, Phencyclidine and Cannabis, in violation of 21 U.S.C. § 846 occurring from 2002 to January 2006 in the District of Columbia, Maryland, Virginia, California, and elsewhere. See ECF No. 30. Ingram and the government subsequently entered into a plea agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which provided for a stipulated period of incarceration of thirteen years (156 months). ECF No. 182 at 2. On April 29, 2008, Ingram pleaded guilty to Count One of the Superseding Indictment. Id. at 1.

The Presentence Investigation Report ("PSI Report") calculated Ingram's base offense level at 34 based on the quantity of drugs he possessed, added two points for the possession of firearms, and deducted three points for acceptance of responsibility, resulting in a total offense level of 33. See PSI Report at 8. The PSI Report accorded Ingram a criminal history category of IV because (1) he had three prior convictions (two drug offenses and one attempted robbery offense), resulting in a subtotal criminal history score of 6; (2) he was under supervised release at the time he committed the offense in this case, which added two points to his criminal history category; and (3) he committed the offense in this case less than two years after his release from imprisonment, which added one point to his criminal history category. See id. at 10-14. Ingram's total criminal history score of 9 established a criminal history category IV under the

then-applicable Sentencing Guidelines ("Guidelines"). Id. at 14. With a total offense level of 33 and a criminal history category of IV, Ingram's Guideline range was 188 to 235 months' incarceration. Id. at 26.

On July 17, 2008, the Court sentenced Ingram to thirteen years' (156 months) imprisonment and five years' supervised release. See ECF Nos. 210, 211. Although the Court adopted the PSI Report's findings without change, it departed from the Guideline range of 188 to 235 months' incarceration and instead sentenced Ingram in accordance with the parties' Rule 11(c)(1)(C) plea agreement. ECF No. 211 at 1-2. Ingram did not appeal his conviction and sentence.

In November 2011, the United States Sentencing Commission promulgated Amendment 750 to the Guidelines. Among other things, Amendment 750 lowered the base offense levels for crack cocaine offenses. See U.S.S.G. app. C, amend. 750 (Nov. 2011); see U.S.S.G. § 2D1.1(c)(3) (Nov. 2011). The Sentencing Commission agreed that this part of Amendment 750 would become retroactive effective November 1, 2011. See U.S.S.G. § 1B1.10(c).

Ingram has now moved to vacate, set aside, or correct his sentence. Liberally construing his pro se motion, Ingram appears to assert that he is entitled to post-conviction relief on two grounds: (1) his sentence was unlawfully enhanced based on his prior felony drug convictions, and (2) his sentence should be reduced based on Amendment 750. See Def.'s Mot. at 5-12.

## II. ANALYSIS

A.   **Timeliness of Ingram's Unlawful Sentence Enhancement Claim**

The Court construes Ingram's unlawful sentence enhancement claim as being asserted pursuant to 28 U.S.C. § 2255, which permits a person in custody under sentence by a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence,"

on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, . . . that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If the reviewing court finds that any of these grounds exist, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

"28 U.S.C. § 2255(f) sets a one-year limitation for filing a motion pursuant to this section and establishes that the limitation will run from the latest of four enumerated circumstances." United States v. McDade, __ F.3d __, __, 2012 WL 5457675, at *4 (D.C. Cir. 2012). Specifically, the statute provides that:

> The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

"In most cases, the operative date from which the limitation period is measured will be the one identified in [§ 2255(f)(1)]: 'the date on which the judgment of conviction becomes final.'" Dodd v. United States, 545 U.S. 353, 357 (2005) (citation omitted). In this case, there is no dispute that Ingram filed his motion more than one year after this Court's judgment became

final. Where, as here, "a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals." Sanchez-Castellano v. United States, 358 F.3d 424, 427 (6th Cir. 2004); accord Murphy v. United States, 634 F.3d 1303, 1307 (11th Cir. 2011); United States v. Plascencia, 537 F.3d 385, 388 (5th Cir. 2008); United States v. Prows, 448 F.3d 1223, 1227-28 (10th Cir. 2006); Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999); cf. Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). This Court entered judgment on July 28, 2008. See ECF No. 210. Under the then-applicable version of the Federal Rules of Appellate Procedure, Ingram had ten days to file an appeal, i.e., until August 7, 2008. See Fed. R. App. P. 4(b)(1)(A) (2005).[1] He filed no appeal, so his conviction became "final" on August 7, 2008. Applying § 2255(f)'s one-year limitation period, Ingram had until August 7, 2009, to file his motion. But Ingram filed his motion on November 28, 2011, see Def.'s Mot. at 1, more than two years after this deadline. Accordingly, Ingram's § 2255 motion must be deemed untimely if the one-year limitation period began to run on "the date on which the judgment of conviction [became] final." 28 U.S.C. § 2255(f)(1).

Recognizing this obstacle, Ingram invokes an alternative trigger to § 2255's one-year statute of limitations, see Def.'s Mot. at 12, which provides that the limitation period begins to run on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," 28 U.S.C. § 2255(f)(3). Ingram asserts that his motion is timely under § 2255(f)(3) in light of intervening case law limiting the circumstances under which a

---

[1] Under the current rules, a defendant has fourteen days to appeal. See Fed. R. App. P. (4)(b)(1)(A) (2011).

sentence may be enhanced under 21 U.S.C. § 841(b)(1) based on prior felony drug convictions. See Def.'s Mot. at 12. Ingram identifies the Fourth Circuit's panel decision in United States v. Simmons, 635 F.3d 140 (4th Cir. 2010), as the source of his purported "newly recognized" right. Def.'s Mot. at 1. However, the government asserts, and the Court agrees, that Ingram's claim is more accurately supported by Carachuri-Rosendo v. Holder, __ U.S. __, 130 S. Ct. 2577 (2010), and the en banc decision of the Fourth Circuit in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), which vacated the panel decision upon which Ingram relies.

The defendant in Simmons pleaded guilty to drug trafficking in federal court and was subjected to a sentencing enhancement pursuant to 21 U.S.C. § 841(b)(1) because the district court found that his prior state conviction for marijuana possession was a "'felony drug offense' for purposes of applying the mandatory minimum sentences authorized in 21 U.S.C. § 841(b)(1)(D)." United States v. Simmons, 340 F. App'x 141, 142 (4th Cir. 2009). The Fourth Circuit affirmed the district court's judgment, id., but the Supreme Court, in a brief memorandum decision, vacated that judgment and remanded the case to the Fourth Circuit "for further consideration in light of Carachuri . . . ," Simmons v. United States, __ U.S. __, 130 S. Ct. 3455 (2010). In Carachuri, the Supreme Court held that the question of whether a prior conviction is an "aggravated felony" within the meaning of the Immigration and Nationality Act must be resolved by looking at the offense for which the defendant was <u>actually</u> convicted, not the offense for which he <u>could have been</u> convicted based on his conduct. See __ U.S. at __, 1380 S. Ct. at 2580 (quoting 8 U.S.C. § 1229b(a)(3)). Following the Supreme Court's remand of Simmons, a panel of the Fourth Circuit held that Carachuri did not require any change in the court's prior holding. See Simmons, 635 F.3d at 145. However, after granting rehearing en banc, the Fourth Circuit reversed the panel decision. Simmons, 649 F.3d at 239. The en banc

court "held that, in deciding whether to enhance federal sentences based on prior North Carolina convictions," courts must look "not to the maximum sentence that North Carolina courts could have imposed for a hypothetical defendant who was guilty of an aggravated offense or had a prior criminal record, but rather to the maximum sentence that could have been imposed on a person with the defendant's actual level of aggravation and criminal history." United States v. Powell, 691 F.3d 554, 556 (4th Cir. 2012) (citing Simmons, 649 F.3d at 241).

Relying on Carachuri and Simmons, Ingram contends that this Court unlawfully enhanced his sentence under 21 U.S.C. § 841(b)(1) by relying on prior convictions for which he received "a sentence of less than one year imprisonment." Def.'s Mot. at 12. He further asserts that his motion is timely under § 2255(f)(3) because Carachuri and Simmons were decided after the judgment became final in this case. See id. The Court finds Ingram's position unpersuasive for several reasons.

First, contrary to Ingram's assertion, his sentence was not enhanced under 21 U.S.C. § 841(b)(1) based on his prior convictions. Under 21 U.S.C. § 851(a)(1), "[a] judge may not impose an enhanced penalty [under § 841(b)(1)] unless before trial—or before a guilty plea—the prosecutor files an information stating in writing the previous convictions forming the basis for the enhancement." United States v. Vanness, 85 F.3d 661, 663 (D.C. Cir. 1996) (citing 21 U.S.C. § 851(a)(1)). In other words, "[a] prosecutor's compliance with § 851(a)(1) is . . . a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions." Id. at 663 n.2. Here, the government did not file a § 851(a)(1) information, and the Court consequently did not impose an enhanced sentence upon Ingram based on his prior convictions. The Court instead sentenced Ingram in accordance with the plea agreement he reached with the government, which did not seek to enhance Ingram's sentence under §

7

841(b)(1) based on his prior convictions. See ECF Nos. 182, 211.

Second, even if Ingram's sentence had been enhanced under § 841(b)(1), his motion challenging that enhancement is not timely under § 2255(f)(3). To qualify as timely under § 2255(f)(3), a motion must be filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3) (emphasis added); see also Dodd, 545 U.S. at 358-59 (Under § 2255(f)(3), "if this Court decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's decision within which to file his § 2255 motion." (emphasis added)). Thus, the accrual date for Ingram's motion must be measured by the Supreme Court decision that initially recognized the right asserted in his motion. And the only decision conceivably fitting this description is Carachuri, which the Supreme Court issued on June 14, 2010. Because Ingram filed his § 2255 motion on November 28, 2011, see Def.'s Mot. at 1, more than a year after Carachuri, his motion is not timely under § 2255(f)(3).

Third, even assuming that Ingram's sentence had been enhanced under § 841(b)(1) and he filed his motion within one year of Carachuri, the motion still would not satisfy § 2255(f)(3), because Ingram has not shown that his motion asserts a "right . . . made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Ingram has offered no argument on this issue, and several federal courts have held that Carachuri is not retroactively applicable to cases on collateral review. See, e.g., Powell, 691 F.3d at 560; Shaeffer v. United States, No. 11-cv-155, 2012 WL 1598061, at *3 (E.D. Tenn. May 7, 2012) (collecting cases); Bogardus v. United States, No. 110-155, 2012 WL 292870, at *6 (S.D. Ga. Jan. 4, 2012) ("[A]n exhaustive search reveals that nearly every court to consider whether Carachuri applies retroactively has concluded that it does not." (collecting cases)). Ingram has therefore failed to show that his motion falls

8

within the scope of § 2255(f)(3).

In sum, Ingram's § 2255 motion must be dismissed as untimely because he filed it more than one year after his judgment of conviction became final within the meaning of § 2255(f)(1), and because it does not satisfy the requirements of § 2255(f)(3). Since the Court concludes that Ingram's § 2255 motion is untimely and fails as a matter of law for that reason, it need not hold an evidentiary hearing on the motion. See United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) ("A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting 28 U.S.C. § 2255)).

**B.     Ingram's Motion to Reduce His Sentence Based on Amendment 750**

Ingram also appears to seek relief based on Amendment 750 to the Guidelines, which lowered base offense levels for crack cocaine offenses effective November 1, 2011. See Def.'s Mot. at 6 (requesting "relief under the new 18-1 ratio for the new guidelines that went retroactive on the 1st of November"). Although Ingram does not state as much, the Court construes his motion as being made pursuant to 18 U.S.C. § 3582(c)(2) (2006), which provides that

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, as a threshold matter under § 3582(c)(2), "the defendant must have been sentenced 'based on a sentencing range that has subsequently been lowered.'" United States v. Berry, 618 F.3d 13, 16 (D.C. Cir. 2010) (quoting 18 U.S.C. § 3582(c)(2)) (emphasis added). The government asserts that Ingram's sentence was based on a Rule 11(c)(1)(C) plea agreement that was not tied

to any particular Guideline sentencing range, and that Ingram is therefore ineligible for § 3582(c)(2) relief. Gov't's Opp'n at 18. For the reasons that follow, the Court agrees.

In determining whether a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is "based on" the Guidelines, the Supreme Court's recent decision in Freeman v. United States, __ U.S. __, 131 S. Ct. 2685 (2011), is controlling. There, the defendant was indicted for several crimes, including possession with the intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). Id. at __, 2691 (plurality). He entered into a Rule 11(c)(1)(C) plea agreement providing for an agreed-upon sentence of 106 months' imprisonment. Id. The agreement reflected "the parties' expectation that [the defendant] would face a Guidelines range of 46 to 57 months, along with a consecutive mandatory minimum of 60 months for possessing a firearm in furtherance of a drug-trafficking crime." Id. (internal citation omitted). "The recommended sentence of 106 months thus corresponded with the minimum sentence suggested by the Guidelines, in addition to the 60-month" mandatory minimum. Id. The district court accepted the plea agreement and imposed the agreed-upon sentence of 106 months' imprisonment. Id. After the Sentencing Commission amended the Guidelines to remedy the disparity between the penalties for cocaine base (crack) and powder cocaine offenses, the defendant moved to reduce his sentence under 18 U.S.C. § 3582(c)(2). Id. at __, 2691-92 (plurality). The district court denied the motion, and the Sixth Circuit affirmed, reasoning that § 3582(c) does not authorize the reduction of a sentence imposed following a Rule 11(c)(1)(C) plea agreement, absent a miscarriage of justice or mutual mistake. Id. at __, 2692 (plurality).

The Supreme Court reversed the Sixth Circuit, in a 4-1-4 decision. Justice Kennedy, writing for a four-justice plurality, reasoned that while "Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, . . . that agreement does not

discharge the district court's independent obligation to exercise its discretion" in imposing sentences. Id. "In the usual sentencing, whether following trial or plea," the plurality observed that "the judge's reliance on the Guidelines will be apparent, for the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." Id. The plurality concluded that "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." Id. at __, 2695 (plurality). Applying these principles, the Freeman plurality determined that the defendant was eligible for § 3582(c)(2) relief because, even though his sentence followed a Rule 11(c)(1)(C) plea agreement, "[t]he transcript of [his] sentencing hearing reveal[ed] that his original sentence was based on the Guidelines." Id.

Justice Sotomayor wrote a concurring opinion taking a narrower approach. Although she agreed with the plurality's conclusion that the defendant was eligible for a sentence reduction under § 3582(c)(2), she disagreed "with the plurality that the district judge's calculation of the Guidelines provide[d] the basis for the term of imprisonment imposed pursuant to" the Rule 11(c)(1)(C) plea agreement. Id. at __, 2695-97 (Sotomayor, J. concurring). Rather, in her view, "the term of imprisonment imposed by a district court pursuant to [a Rule 11(c)(1)(C) plea agreement] is 'based on' the agreement itself, not on the judge's calculation of the Sentencing Guidelines." Id. at __, 2695 (Sotomayor, J., concurring). This, she reasoned, is because, "[a]t the time of sentencing, the term of imprisonment imposed pursuant to a [Rule 11(c)(1)(C) plea] agreement does not involve the court's independent calculation of the Guidelines or consideration of the other 18 U.S.C. § 3553(a) factors"—instead, "[t]he court may only accept or reject the agreement, and if it chooses to accept it, at sentencing the court may only impose the

term of imprisonment the agreement calls for; the court may not change its terms." Id. at __, 2695 (Sotomayor, J., concurring). She thus concluded that a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is "based on" that agreement, not on the Guidelines, even if the Guidelines were relevant to the parties' plea negotiations and even if the sentencing court referred to the Guidelines in deciding whether to accept the plea. Id. at __, 2696 (Sotomayor, J., concurring).

Justice Sotomayor did, however, recognize a caveat: when a Rule 11(c)(1)(C) plea agreement "expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission, the term of imprisonment is 'based on' the range employed and the defendant is eligible for sentence reduction under § 3582(c)(2)." Id. at __, 2695 (Sotomayor, J., concurring) (emphasis added). She provided two examples to illustrate this principle. See id. at __, 2697-98 (Sotomayor, J., concurring). First, when a Rule 11(c)(1)(C) plea agreement explicitly "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range," the "district court's acceptance of the agreement obligates the court to sentence the defendant accordingly, and there can be no doubt that the term of imprisonment the court imposes is 'based on' the agreed-upon sentencing range within the meaning of § 3582(c)(2)." Id. at __, 2697 (Sotomayor, J., concurring). Second, when "a plea agreement . . . provide[s] for a specific term of imprisonment—such as a number of months—but also make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty," and that "sentencing range is evident from the agreement itself," "the term of imprisonment imposed by the court in accordance with that agreement is 'based on' that range." Id. at __, 2697-98 (Sotomayor, J., concurring). Because the plea agreement in

12

Freeman stated that the defendant "agree[d] to have his sentence determined pursuant to the Sentencing Guidelines" and explicitly referenced the applicable Guideline ranges, Justice Sotomayor agreed with the plurality that the defendant's sentence was "based on" the Guidelines. Id. at __, 2699 (Sotomayor, J., concurring).

In applying Freeman here, the Court must first determine whether the plurality opinion or Justice Sotomayor's concurrence controls. Under Marks v. United States, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[] on the narrowest grounds." 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted). Applying the Marks rule to Freeman, every Circuit to consider the question has concluded that Justice Sotomayor's concurrence in Freeman expresses the holding of the case because it contains the narrowest grounds for the Court's decision. See United States v. Dixon, 687 F.3d 356, 359 (7th Cir. 2012); United States v. Thompson, 682 F.3d 285, 290 (3d Cir. 2012); United States v. Austin, 676 F.3d 924, 927-28 (9th Cir. 2012); United States v. Rivera-Martinez, 665 F.3d 344, 348 (1st Cir. 2011); United States v. Brown, 653 F.3d 337, 340 (4th Cir. 2011); United States v. Smith, 658 F.3d 608, 611 (6th Cir. 2011); United States v. White, 429 F. App'x 43, 47 (2d Cir. 2011). Other members of this Court have reached the same result. See, e.g., United States v. Heard, 859 F. Supp. 2d 97, 100 (D.D.C. 2012); United States v. Turner, 825 F. Supp. 2d 240, 245 (D.D.C. 2011); United States v. Walker, 818 F. Supp. 2d 151, 152 (D.D.C. 2011). Finding the reasoning of these decisions persuasive and in the absence of binding authority from the District of Columbia Circuit, this Court likewise finds that Justice Sotomayor's concurrence is the controlling opinion in Freeman.

Under Justice Sotomayor's approach, Ingram is ineligible for § 3582(c)(2) relief because

the stipulated term of imprisonment in his Rule 11(c)(1)(C) plea agreement was not expressly "based on" a Guideline sentencing range. Although the opening paragraph of the plea agreement refers generally to the applicability of the Guidelines, see ECF No. 182 at 1 ("Your client . . . understands that your client will be sentenced according to 18 U.S.C. Sections 3553(a) and 3553(c) through (f), upon consideration of the [Guidelines], which will apply to determine your client's [G]uideline range."), the agreed-upon term of imprisonment does not refer to a particular Guideline range, offense level, or criminal history category. Rather, the plea agreement states only that the parties "agree that a sentence of incarceration of 13 years is the appropriate sentence for the offense(s) to which [the defendant] is pleading guilty," with no explanation for how this number was reached. Id. at 2. As a result, this Court, like the First Circuit in Rivera-Martinez, "cannot identify a referenced sentencing range from the [plea a]greement alone," and therefore "would have to supplement the [a]greement with either the parties' background negotiations or the facts that informed [this] judge's decision to accept the plea," which "Justice Sotomayor's concurrence forbids." 665 F.3d at 349 (citation omitted); see also Dixon, 687 F.3d at 362 (finding defendant ineligible for a sentence reduction under § 3582(c)(2) where "[t]he written [plea] agreement . . . did not expressly base the agreed sentence on a Guideline range in the written agreement itself"). Furthermore, the parties' agreed-upon sentence of thirteen years (156 months) was well below the bottom of Ingram's Guideline range of 188 to 235 months, see ECF No. 211 at 1-2, undermining the inference that the Guidelines formed the basis for his sentence. Because there is no indication from the plea agreement that the parties' agreed-upon sentence was "based on" the Guidelines, the Court concludes that Ingram is not eligible for a sentence reduction under § 3582(c)(2).

### III. CONCLUSION

For the foregoing reasons, Ingram's motion to vacate, set aside, or correct his sentence is denied.

**SO ORDERED** this 3rd day of December, 2012.[2]

/s/ Reggie B. Walton
REGGIE B. WALTON
United States District Judge

---

[2] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.